UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RANDALL TRAPP, )
    Petitioner )
V. ) Civil Action No.
) 05-11103-PBS
)
LUIS SPENCER, Superintendent at MCI-NORFOLK, )
    Respondent )

AFFIDAVIT OF VICTORIA L. NADEL

I, Victoria L. Nadel, having been duly sworn, do state the following:

1. I am an attorney licensed to practice in Massachusetts since 1995.

2. In the early spring of 1999, a colleague of mine, Bruce Macdonald, contacted me regarding potentially assisting Mr. Trapp.

3. Mr. Macdonald had known Mr. Trapp for several years; I have a memory that Mr. Macdonald briefly represented Mr. Trapp but was not experienced enough an attorney at the time of the original trial to represent him at trial but it may be that he knew him from some other event.

4. However, the two men had kept in contact and Mr. Macdonald asked if I would visit with Mr. Trapp to see if there were any viable issues in his new trial motion.

5. I spoke with Mr. Macdonald today to explain the current situation and I anticipate him filing an affidavit with this Honorable Court within the next week explaining his memory of the events and his understanding of Mr. Trapp's concerns about preserving his federal claims.

6. Mr. Macdonald had explained to me, in 1999, that Mr. Trapp filed his new trial motion in Superior Court within one year of the date of the final ruling by the Supreme Judicial Court.

7. I visited Mr. Trapp shortly thereafter, on April 15, 1999, with Mr. Macdonald and reviewed his case.

8. Mr. Macdonald and I then met with members of the Committee for Public Counsel Services, including Don Bronstein and Carlo Obligato, explaining that Mr. Trapp appeared to have viable claims and that he should probably have been afforded counsel to represent him post conviction.

9. CPCS then assigned the matter to me on May 10, 1999 first to review for the meritorious issues and then to seek them through the legal process including pursuing federal claims if necessary.

10. On May 12, 1999, I informed the Supreme Judicial Court of the late appointment of counsel and asked that the Court stay all proceedings since I was not familiar enough with the case to pursue anything at that moment.

11. The Supreme Judicial Court maintained the case on its docket until the new trial motion could be amended and decided by the Superior Court.

12. During the course of representing Mr. Trapp, I had numerous conversations with his trial experts including conversations with Dr. Mark on April 26, 2000, Dr. Rothfarb on April 28, 2000, further conversations in May, 2000 with Dr. Mark, continuing communication with Dr. Mark and his associates in July and October, 2001 regarding the injury to Mr. Trapp's brain.

13. In particular, Dr. Vernon Mark, who had appeared as an expert at both trials, provided invaluable assistance at no cost to Mr. Trapp due to his concerns about the validity of the claims of the Commonwealth experts and his sincere belief that justice was not done in the present case. I spoke with him and communicated with him via mail and fax over the course of several years as I sought funding for further medical tests which would establish or refute the injury to Mr. Trapp's brain.

14. After conversations with Dr. Mark, I felt that the result of a PET scan would be determinative in either creating or destroying Mr. Trapp's new trial motion.

15. I believed that a positive PET scan indicating an injury would demonstrate the significance of the trial court's error in requiring counsel to turn over irrelevant discovery which confused the jury. This, I surmised and still believe established not only that Mr. Trapp had a brain defect but also that the state courts erred as a matter both of Due Process and attorney-client privilege recognized under

the Sixth Amendment in permitting the order of reciprocal discovery.

16. Once Mr. Trapp's family could secure funding (after the Superior Court had denied motions for post-conviction funds to perform medical tests), Dr. Mark arranged for a PET scan to be performed at the Massachusetts General Hospital.

17. The PET scan confirmed the defense experts' position that Mr. Trapp suffered from a brain injury.

18. After the test results came in, I amended the new trial motion which was later considered, without a hearing, and denied by Judge Mulligan of the Superior Court.

19. I appealed that ruling and proceeded to file all necessary documents with the Supreme Judicial Court single justice who denied the claims on April 27, 2004 and, after reconsidering the claims, denied the matter entirely on May 25, 2004.

20. I was under the incorrect belief that Mr. Trapp had one year to file his habeas petition from May 25, 2004 because I was under the faulty impression that the conviction did not become final until the Supreme Judicial Court made its ultimate ruling – in this case denying the new trial motion.

21. At all times, from the moment I met Mr. Trapp and before I even knew if the Committee for Public Counsel Services would appoint me or anyone else to the case, Mr. Trapp had been concerned about protecting his federal rights and preserving all issues for federal review.

22. With every setback in state court, Mr. Trapp kept his hope alive because he felt that the federal courts would review his case fairly and fully.

23. Mr. Trapp, who definitively suffers from a brain injury, and has been in prison for over twenty years for a homicide that occurred when he was, in all likelihood, incapable of premeditation or knowing the consequences of his actions, has held out this long all in the hope and aspiration of a fair hearing before a federal court.

24. I let him down.

25. I made the catastrophic error of believing that the conviction did not become final until the state court made its final determination.

26. That error, and nothing else, has caused this delayed filing.

27. I made an honest, but devastating, mistake for which there is no excuse and I do not seek an excuse.

28. I should have confirmed with CPCS, when they allowed me to pursue habeas review at the time of appointment, to calculate with me the appropriate remaining time of the limitations period.

29. Indeed, since I have not practiced much in federal court, I had a fiduciary duty to review and understand all of the rules pertaining to federal practice, including the calculation of the limitation period of habeas petitions.

30. The calculation is confusing because Mr. Trapp did file his petition for certiorari which was denied in December, 1996, a few scant months after his state conviction became final for purposes of the AEDPA in state court. Due to that tolling period, there were 137 days left under the statute to file a timely habeas petition after the Supreme Judicial Court denied the new trial motion on May 25, 2004. Therefore, the petition was due on October 14, 2004.

31. Had I reviewed this with able and available counsel at CPCS or with any knowledgeable attorneys, I would have filed the petition on time.

32. There was no other impediment. I knew the issues in this case; I knew the federally preserved issues; I had excellent communication with my client and was well aware, at all times, that he sought federal review. I easily could have filed the petition in October, 2004, or even July, 2004, had I known that that was the effective date.

33. Further, I was prepared to file for federal review and, indeed, when the petition arrived in court it had a lengthy memorandum attached which elaborated on the issues.

34. My timing mistake, my egregious negligence, my inexcusable error should not be imparted onto Mr. Trapp.

35. He did nothing wrong and he has been anxious and eager to seek federal review since his conviction was upheld by the state court in 1996.

36. In the present matter, while the petition was untimely, equitable tolling should apply to the almost eight months in which counsel could have and would have but failed to file the petition since Mr. Trapp was misinformed by ignorant counsel of the correct date for filing.

Signed, under the penalty of perjury, on this 21st day of July, 2005.

_____
Victoria L. Nadel, Esq.

CERTIFICATE OF SERVICE

I certify that a copy of the within motions and all supporting documents were this day also mailed by First Class United States mail to the Attorney General of the Commonwealth of Massachusetts:

> A.A.G. Susanne G. Reardon
> Office of the Attorney General Thomas Reilly
> One Ashburton Place
> Boston, MA 02108

Signed under the penalties of perjury, July 21, 2005.

_____
Victoria L. Nadel