UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RANDALL TRAPP,
    Petitioner
V.

LUIS SPENCER, Superintendent at MCI-NORFOLK,
    Respondent

Civil Action No.
05-11103-PBS

**PETITIONER'S OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMENDATION**

Randall Trapp objects to Magistrate Judge Bowler's Report and Recommendation (MRR) that his petition for a writ of habeas corpus be dismissed as untimely filed and not subject to equitable tolling. This Court reviews the MRR *de novo* and without deference. United States v. Raddatz, 447 U.S. 667, 674 (1980); Gioiosa v. United States, 684 F.2d 176, 178 (1st Cir. 1982); 28 U.S.C. § 636(b)(1)(C).

**SUMMARY**

Mr. Trapp's petition for a writ of habeas corpus should be subject to equitable tolling; the claims should be addressed on the merits. The Magistrate's Report and Recommendation to the contrary is based on important errors both in misapplying the law and in misunderstanding the record.

In particular, the MRR fails to acknowledge that the petitioner, not counsel, is entitled to federal review. Therefore, the errors of the attorney should not foreclose the petitioner from federal review of his claims when he was, at all times diligent

y

about pursuing federal remedies. Further, the MRR avers that the passage of time prejudices the respondent in this case since years have passed since the offense in question. Yet, the difference in the proper filing date of the petition and the date the petition was actually filed was a matter of months, not years. The MRR fails to acknowledge the reasons for the long delay between the offense and the filing of the petition which includes two trials and motions pending over the years in state court. The prejudice in failing to permit the petitioner's first and only habeas petition is significant since his claims have never been subject to federal review. Therefore the petition should be subject to equitable tolling and considered timely filed.

## ARGUMENT

The MRR correctly noted that the petition was not timely filed due to attorney error. Counsel believed there was one year in which to file the habeas petition from the date of the denial of the "gatekeeper" petition. In fact, in the instant case, the Supreme Judicial Court affirmed the conviction on July 31, 1996. Commonwealth v. Trapp, 423 Mass. 356 (1996). Counsel filed a petition for certiorari which was denied on December 16, 1996. Trapp v. Massachusetts, 519 U.S. 1045 (1996). Mr. Trapp filed his *pro se* new trial motion on July 31, 1997 which was pending until May 25, 2005. Therefore, the actual due date of the petition for habeas corpus was October 14, 2004.

Due to the egregious error of counsel and the merits of this first petition for habeas corpus review, the Petitioner seeks to allow his habeas petition under an equitable tolling argument despite the rejection of this argument by the decision in the MRR.

1.  **REJECTION OF THE EQUITABLE TOLLING ARGUMENT CREATES MORE PREJUDICE THAN ACCEPTING THE PETITION AS TIMELY FILED.**

As the MRR acknowledged, equitable tolling is available under certain circumstances for petitions for habeas corpus (MRR at 17). Several factors influence courts when determining if equitable tolling is appropriate. The First Circuit has weighed the following factors: (1) the lack of actual notice of the filing requirement, (2) the lack of constructive notice of the filing requirement, (3) the diligence in pursuing one's rights, (4) the absence of prejudice to the defendant, an (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement. Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998). While those factors present a guide, they are not exhaustive in determining whether equitable tolling applies. Id. Of the five factors, three apply directly to the instant matter. The petitioner objects to the MRR's rejection of his arguments in relation to these three issues which follow seriatim.

> (A) THE PETITIONER WAS, AT ALL TIMES, DILIGENT IN PURSUING HIS RIGHTS.

In the present case, Mr. Trapp pursued every avenue to preserve his appellate rights including filing his *pro se* new trial motion within one year of the Supreme Judicial Court affirming his conviction in order to toll the statute of limitations for his habeas review. He continued to request appointed counsel even after the Superior Court denied his new trial motion and while that denial was pending before a single justice of the Supreme Judicial Court. When he finally obtained counsel, who ultimately amended his new trial motion and

succeeded in maintaining the matter on the Supreme Judicial Court docket for the several years it took to decide the amended motion, he was actively involved in every aspect of the case. Mr. Trapp continually asked about his habeas claim and wanted to know which issues would be reviewed by the federal court. Mr. Trapp relied on his lawyer's statements but was, at all times, personally diligent in pursuing his rights. The error of counsel in calculating the date for filing is an egregious error when recognizing the totality of the circumstances and the petitioner objects to the MRR's contrary ruling. Given that the right of review belongs to the petitioner who diligently sought federal review of his state court conviction, the error of counsel in failing to timely file, which was an error of a mere matter of months, not years, should not inhibit federal review of his claims.

Further, the MRR avers that counsel was not diligent in representing the petitioner in state court (MRR at 21). From the moment of court appointment, this case presented procedural and logistical obstacles including staying the matter in the Supreme Judicial Court, learning about the issues in the case, understanding and deciphering the medical data relevant to the claim, arguing for post conviction funds for an indigent client, arranging for private funds to be assembled when public funds were unavailable, arranging the logistics of setting up a PET scan for an inmate, relying on the gratis services of an expert to interpret that PET scan for purposes of the new trial motion, and then writing and filing the new trial motion. Counsel is a solo practitioner without a staff of any kind with eternal deadlines and obligations of any solo practitioner; Mr. Trapp was not the only client requiring services in the relevant timeframe. Given that

every document filed in state court complied with the filing rules both for timeliness and for accuracy, the petitioner objects to the MRR's claim of a lack of diligence. The state court claims were pursued diligently both by the petitioner and his counsel. The federal petition was filed with a thorough memorandum of law and basis in fact and law for federal review. The only lack of diligence on the part of counsel involves a failure to comprehend the requirements of the AEDPA time calculations which was an honest error, as noted in the MRR. This is the critical mistake for examination.

Under the totality of circumstances, this one error, a miscalculation of eight months, should not create the impression with this Court that the petitioner was less than diligent in pursuing his federal claims. This minimal delay should not prevent Mr. Trapp from obtaining federal review. Equitable tolling is appropriate in this case.

(B) THERE IS NO PREJUDICE TO THE RESPONDENT.

In the present matter, the Petitioner seeks to toll less than eight months of time. The MRR suggests that the enormous period of time between the death of the victim and the federal review is somehow attributable to the lack of diligence or lack of timeliness of the petition (MRR at 24-25). It is not. First, the petitioner was tried and convicted and that matter was reversed on appeal. He was then retried and convicted with the conviction upheld by the Supreme Judicial Court. While seeking post-conviction counsel, he filed a new trial motion. At no time during the pendency of any motion in state court did the Commonwealth aver prejudice due to inordinate delay, a claim to which the Commonwealth was

entitled. See, e.g., Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 637-638 (2001); Commonwealth v. Berrios, 64 Mass. App. Ct. 541, 557 (2005). Documents were timely filed in state court where the matter lingered on the docket due to no fault of the petitioner and with no objection by the Commonwealth.

Realistically, the less than eight month delay in the filing of the petition does not prejudice the respondent's claims. It is not an undue delay which may impair the Commonwealth's case, especially since this respondent has been on notice of the pendency and activity of this case since the petitioner filed his *pro se* new trial motion. It is not an extraordinary period of time and it has no bearing on the Commonwealth's ability to refute the Petitioner's claims successfully. Therefore, had this petition been timely filed, the Commonwealth would be in the exact same position it is in at this time in terms of the substance and merit of the arguments.

By suggesting that the 24 year delay would prejudice the Commonwealth, the MRR is in error (MRR at 25). The respondent's assertion that retrial would be difficult was not supported by facts and is, in fact, contrary to the argument that would prevail at trial, whether or not the defendant was criminally liable for the death of Lawrence Norton. The relevant issue is and always has been criminal responsibility. There has been no factual or legal argument suggesting why any potential difficulty in retrying this case should take precedence over the petitioner's constitutional right to due process.

Regardless of potential difficulty, guilty parties have faced prosecution and conviction many years after events occurred. See, e.g., Beckwith v. State, 707 So. 2d 547, 604-05 (Miss. 1997), Chambliss v. State, 373 So. 2d 1185 (Ala. Crim. App. 1979); Commonwealth v. George, 430 Mass. 276 (1999); Commonwealth v. Geoghan, 14 Mass. L. Rptr. 331 (2002). Contrarily, the Innocence Project has succeeded in reversing convictions for 162 people based upon forensic testing unavailable at the time of the trial but made available post conviction, sometimes years after "finality". See; http://www.innocenceproject.org

Due process demands the release of those exonerated regardless of (a) the passage of time and (b) the lack of anyone held accountable for the offense. In the instant case, the petitioner has raised a forensic argument in regard to his injured brain which, like those exonerated through The Innocence Project, was not available at the time of his trial. The PET scan in this case demonstrates that the experts who testified on behalf of the government at trial were completely incorrect in their assessment of the CT scan. The proof of brain injury obtained post-conviction raises substantial concerns about the validity of the first degree murder conviction in the present matter and whether or not the petitioner received a fair trial.

In balancing the equities, the prejudice to the petitioner in being unable to raise his federal claims is far more significant than the respondent's alleged prejudice preparing for trial years after the offense. The relevant issue of insanity premised upon a brain injury relies upon expert testimony and not percipient witnesses whose memories can fade over time. If anything, improvements in

forensic techniques will clarify the presence or lack of petitioner's injury. Modern science will provide a more precise and clear picture for a jury on the issue of insanity. The respondent is not prejudiced by the additional eight month delay. And the MRR conclusion that this prejudice outweighs the petitioner's right to federal review was error. The petitioner, therefore, objects to this conclusion.

### (C) THE PETTIONER'S IGNORANCE WAS ENTIRELY REASONABLE.

Mr. Trapp met his attorney several years ago and their working relationship has been excellent. Mr. Trapp learned to trust and depend on his counsel to protect his interests, preserve his claims and argue on his behalf. Mr. Trapp believed that his lawyer was a zealous and effective advocate who deeply cared about him as a person as well as the legal claims Mr. Trapp's case presented. Until his lawyer erred in filing the petition for habeas corpus late, Mr. Trapp's dependence, trust and reliance were completely well founded. Therefore, when he trusted his lawyer that his habeas rights were protected, he was justified in that belief. He had, until that moment, no reason to second guess his attorney or seek outside assistance in calculating time for filing his federal claim. His lawyer's error should not impact whether or not he receives full and fair federal review of his claims in this, his first petition for habeas corpus. The MRR's conclusion to the contrary is confusing. Counsel and petitioner admittedly knew about the one year limitation. Petitioner's reliance on counsel's interpretation of that timeframe was justified due to the relationship between the attorney and the client. The attorney error, while honest, was egregious if the

claims can never face federal review. The petitioner should not be punished for the errors of his court-appointed counsel. He, therefore, objects to MRR's determination that it was reasonable for him to rely on counsel and yet he should still be barred from raising his federal claims when the attorney is solely at fault for failing to file timely (MRR at 25). The attorney not only admits error, but has claimed this error was egregious; the MRR determined that the mistake revealed a lack of diligence. The petitioner, on the other hand, given the ruling denying equitable tolling, is the one paying the price for this error. It is the petitioner whose life is at stake. The lack of diligence or egregious mistake, whether nefarious or honest in its origin, should not dictate whether or not the petitioner obtains federal review.

The totality of the circumstances reveals an inmate determined to pursue federal remedies to errors in state court rulings. Further, the full accounting of the circumstances reveals an attorney, aware of and at all times concerned with the rights and interests of the client. The client relied on the lawyer who made an utterly human error with potentially dire consequences. This error, however, has a remedy, which is the equitable tolling of a few short months in order to preserve the petitioner's federal claims. This is the appropriate solution to this issue. The petitioner objects to the MRR's contrary determination.

**2.    THE MRR'S REJECTION OF THE PETITIONER'S ARGUMENT ON THE SIGNIFICANCE OF HIS FIRST HABEAS PETITION WAS ERROR.**

In Lonchar v. Thomas, 517 U.S. 314 (1996), decided prior to the effective date of the AEDPA and the time constraints it imposes, the Court discussed the

9

gravity of dismissing a petitioner's first request for habeas review. Indeed, in Lonchar, the Court reversed a dismissal of the petitioner's writ and remanded for further proceedings. The Court exclaimed that the history of the writ ensures safeguarding the highest principles of liberty. Id. at 322.

> Dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty. See Ex parte Yerger, 8 Wall. 85, 95, 19 L.Ed. 332 (1869) (the writ "has been for centuries esteemed the best and only sufficient defence of personal freedom"); Withrow, supra, at 700, 113 S.Ct., at 1758 (O'CONNOR, J., concurring in part and dissenting in part) (decisions involving limitation of habeas relief "warrant restraint"). Even in the context of "second and successive" petitions--which pose a greater threat to the State's interests in "finality" and are less likely to lead to the discovery of unconstitutional punishments--this Court has created careful rules for dismissal of petitions for abuse of the writ. See McCleskey, supra.

Lonchar v. Thomas, 517 U.S. at 324.

Indeed, courts have made exceptions and placed petitioners within the timeframe for filing even in unusual circumstances. For example, in Frasch v. Peguese, 414 F.3d 518 (4th Cir. 2005), the petitioner pleaded guilty in state court in Maryland. Under Maryland law, he had the opportunity to apply for leave to appeal the guilty plea in a collateral, post-conviction proceeding within thirty days of his sentence. His attorney did not file the appeal and the petitioner did not seek review *pro se* within the allotted time period under the state law.

Almost ten years later, petitioner sought a belated review of his conviction, citing ineffective assistance of counsel for failing to file the

initial appeal in a timely fashion. The Court of Special Appeals of Maryland granted leave to file a belated appeal which was, ultimately denied. The petitioner then sought habeas review within one year of that denial which the district court dismissed as untimely. The Court of Appeals for the Fourth Circuit reversed because it determined that the belated appeal was a direct appeal, albeit it a dozen years after the original guilty plea.

Effectively, the Fourth Circuit equitably tolled the ten years between the conviction and the application for leave to file a late appeal even though the petitioner was not at all diligent in seeking to protect his rights under state law and there was nothing "pending" in state court which would toll the statute of limitation for purposes of the AEDPA. The Fourth Circuit tolled that time period even though, under ordinary circumstances, a defendant who pleads guilty waives or relinquishes all constitutional claims. Tollett v. Henderson, 411 U.S. 258, 267 (1973). Constitutional claims are the very claims which may be brought in federal court on a petition for habeas corpus.

Courts agree that the constraints of the AEDPA create a statute of limitations subject to equitable tolling. However, for this determination to have any meaning at all, equitable tolling must have some applicability. This case, where there would otherwise be no recourse for the petitioner and no review of his federal claims, is just such a case.

In the present matter, the MRR explains that the Petitioner has other avenues

of review. This is simply not true. He exhausted his state claims in order to raise his first federal review of the state court findings. The respondent's and the MRR's conclusion that the petitioner has an avenue of review under state law to claim ineffective assistance of counsel for failing to file the federal claim timely is insufficient to guard against the failure of the federal court to afford review of the claims. There still would be no federal review of his state claims and the petitioner would, in essence be asking state courts to review their own rulings without any oversight by the federal courts. This approach is inadequate to preserve the petitioner's right to the great writ.

The petitioner has sought to protect his appellate interests and has been active in the appellate process. Mr. Trapp has, consistently, maintained that he suffers from a brain injury which affected his ability to form the requisite *mens rea* at the time of his offense. Experts at both trials discussed the injury and whether it existed as well as the effect of such an injury on an individual.

In the interim period between his conviction and his amended new trial motion, science has improved greatly and he now has the medical proof of a significant fact unavailable at trial, the undeniable existence of a brain injury. This is significant on its own and even more so given that one of his original claims on direct review involved a discovery order requiring him to deliver medical data which he did not intend to use at trial to the Commonwealth. The Commonwealth's experts then seized upon this irrelevant data to determine that no injury existed. Yet, experts for the defense insisted that the injury could exist even when certain tests prove negative since those tests were not definitive.

The defendant's experts proved to be correct since, as science evolved, a PET scan proved the existence of the injury originally cited by the defendant's trial experts. This proof entirely contradicts the statements made by the Commonwealth's experts at trial. Thus, while the defendant may not be able to demonstrate "actual innocence", he is able to demonstrate "actual brain defect" which would affect the jury's understanding of and deliberation about his insanity.

The Petitioner's arguments have merit, especially in the changing world of forensic science. He has never had an opportunity to present his claims for federal review and should be entitled to this last bastion to safeguard his liberty. Since he has been personally diligent in seeking to preserve his federal claims, in contrast to the petitioner in Frasch, *supra*, and requests a minimal amount of time to be tolled as opposed to the ten years allowed by the Fourth Circuit in Frasch, Mr. Trapp should not be forever impeded from federal review. The merits of the petition and the fact that it is the first time the Petitioner is seeking federal review warrant equitable tolling in the present matter.

### 3.  ATTORNEY NEGLIGENCE AND INEFFECTIVE ASSISTANCE WARRANT EQUITABLE TOLLING.

Mr. Trapp killed Lawrence Norton on May 8, 1981. Mr. Trapp has maintained that he suffers from a brain injury which prevented him from forming the requisite intent to commit murder. In 2001, Mr. Trapp submitted to a PET scan which revealed that he did, indeed, have an organic brain defect, an issue which had been hotly debated at trial. At trial, experts for the defense and the Commonwealth argued over whether

or not a brain injury existed and the instruction to the jury stated that if the jury found that no brain injury existed, it need deliberate no further on the issue of insanity. Advances in science have definitively proven that Mr. Trapp has an organic brain defect.

His insanity does not necessarily prevent him from discussing issues in his case, but it does significantly impair him. He trusted his attorney to file the petition for habeas corpus timely; counsel believed, incorrectly, that she had done so. There was no intentional delay by Mr. Trapp and, indeed, since he had received appointed counsel, the issue of meeting the deadline was out of his hands. Mr. Trapp was entitled to rely on counsel to assist him in perfecting his appeal. Hodas v. Sherburne, Powers & Needham, 938 F.Supp. 58 (D.Mass. 1996) (doctrine of continuing representation precludes faulty party for failing to second guess counsel.) While attorney negligence is not a sufficient rationale for tolling the limitations period, Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), egregious conduct by counsel has been held to establish sufficient cause for tolling the limitations period. Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003).

In Spitsyn, the attorney failed to file the petition for habeas corpus on time despite calls from the client and his mother and did not return the client's case file until after the limitations period had passed. The instant matter is similar to the facts of Spitsyn. Counsel was informed well in advance that she would be responsible to file for habeas and misread the statute which is inexcusable and egregious behavior if it has the effect of preventing federal review of the state

claims forever. Further, counsel informed Mr. Trapp of the wrong date for filing the claim in federal court upon which Mr. Trapp reasonably relied. This misstatement to a client who maintained active involvement in both trials, direct review and throughout the collateral process is beyond mere negligence. It is a factor which, in effect, prohibited or prevented Mr. Trapp from filing his claim on time.

The petitioner objects to the MRR's conclusion that this case is distinguishable for legal purposes from Spitsyn. Just as in the Spitsyn case, where counsel's inaction despite urging to file by the client, amounted to egregious behavior meriting equitable tolling, in the present matter, there was never any question that the client sought federal review of his claims. Indeed, prior to obtaining appointed counsel, Mr. Trapp had filed his own new trial motion in time to preserve his federal claims. He doggedly sought representation even after he filed his *pro se* motion in state court and finally secured counsel on whom he depended throughout the proceedings. Over the course of more than five years during which he was represented, Mr. Trapp learned to trust and depend upon his attorney. That trust carried into the period in which the habeas petition should have been filed. Due to his attorney's error, not the defendant's, it was not timely. For purposes of determining the totality of circumstances in affording the petitioner equitable tolling of time to allow for the prompt filing of his habeas petition, the two cases are identical.

In the present matter, the Committee for Public Counsel Services approved counsel to file the claim, the client reasonably relied on counsel to file timely and

counsel erred. Equitable tolling is applicable because Mr. Trapp, who is already impaired due to his brain injury, relied on his lawyer's statements that his habeas rights were intact. His lawyer's egregious neglect of the appropriate time period despite concerns and cares of Mr. Trapp regarding his federal claims is reason to toll the time and consider the merits of the petition. The petitioner objects to the MRR's ruling to the contrary.

### 4.   JUDICIAL ECONOMY DEMANDS THAT EQUITABLE TOLLING APPLY.

Further, since Mr. Trapp can and should seek review for ineffective assistance of counsel in state court, the merits of the petition for habeas corpus will be addressed at some point. See, Commonwealth v. Harbin, 435 Mass. 654, 662 (2002) (accepting without argument that ineffective assistance of post-conviction counsel is cognizable state claim), Bates v. Commonwealth, 434 Mass. 1019 (2001) (recognizing that a claim of ineffective assistance of appellate counsel may be made in a motion pursuant to Mass. R.Crim. P. 30, 378 Mass. 900 (1979)), Breese v. Commonwealth, 415 Mass. 249 (1993) (recognizing claim of ineffective assistance of second appellate counsel. Commonwealth argued that there is no right to counsel on post-conviction matters and therefore no right to effective assistance of counsel on post-conviction matters to which the Supreme Judicial Court responded, "[w]hen counsel is appointed for a defendant that defendant is entitled to receive effective assistance from appointed counsel. We do not permit any counsel to fall below the [Commonwealth v. Saferian, 366 Mass 89 (1974)] standard." Commonwealth v. Breese, 415 Mass. at 251, n.4). If

the substance of his claims have merit, Mr. Trapp will succeed on his ineffective assistance claim and the matter will be addressed in state court. If, on the other hand, there is no merit to the substance of his claims, then the matter will be over.

Counsel is not contesting here and would not contest that it was her error alone which prevented filing of a timely claim. On any ineffective assistance of counsel claim to be filed in the future, counsel would submit an affidavit, if asked, detailing the contacts between the client and her and Mr. Trapp's insistence on filing his federal habeas on time. Counsel would state, without equivocation, that she erred and that error cost Mr. Trapp his right to federal review.

Any future court, to determine whether or not the error by counsel prejudiced Mr. Trapp would be required to review the merits of the petition for habeas corpus. Strickland v. Washington, 466 U.S. 668, 685 (1984), United States v. Cronic, 466 U.S. 648, 656-657 (1984). To determine whether counsel was effective within the bounds of the Constitution, the defendant must show both that the attorney's performance was deficient and that that deficiency prejudiced the accused. Strickland, 466 U.S. at 687. Thus, the merits of the petition will be litigated either in the present petition or at a future date on an ineffective assistance of counsel claim. But, federal review would only be available at this time. Therefore, the MRR's determination that other avenues exist is essentially incorrect as a matter of practicality.

Even if successful in state court, the petitioner still would be deprived of federal review. Given the dire consequences of this result, the petitioner should

be permitted to go forward with his federal claims at this time.

Therefore, for reasons of judicial economy, the petitioner objects to the MRR's denial of equitable tolling; the matter should proceed in this Honorable Court on the merits.

## CONCLUSION

For all of the foregoing, the Petitioner files these objections to the MRR and respectfully avers that the totality of the circumstances merits equitable tolling to apply to the instant matter in order to deem the petition timely filed. Further, the Court should grant Randall Trapp a writ a habeas corpus and immediately discharge him from the custody of the respondent.

                                                     RANDALL TRAPP
                                                     By his attorney,

                                                     _____
                                                     Victoria L. Nadel
                                                     8 Winter Street
                                                     Boston, MA 02108
                                                     (617) 738-0474
                                                     BBO# 630411

## CERTIFICATE OF SERVICE

I certify that a copy of the within objections were this day mailed by First Class United States mail to the Attorney General of the Commonwealth of Massachusetts:

    A.A.G. Susanne G. Reardon
    Office of the Attorney General Thomas Reilly
    One Ashburton Place
    Boston, MA 02108

Signed under the penalties of perjury, October 5, 2005.

_____
Victoria L. Nadel